## Reed's· Estate.

*Executors and administrators—Surcharge—Delay—Interest.*

Where an administrator does not file an account until eighteen years after letters were issued to him, and litigation on exceptions to the account continues for thirteen years after it was filed, and the prolongation of the litigation is a matter for which the administrator is not responsible, the court will not surcharge the administrator with interest during the period of litigation, nor for the period of five years after letters were issued, but will charge him with interest for the thirteen years prior to filing the account.

Argued Feb. 9, 1903. Appeal, No. 174, Oct. T., 1902, by C. C. Melvin, administrator, from decree of O. C. McKean Co., sustaining exceptions to auditor's report in estate of William R. Reed, deceased. Before BEAVER, ORLADY, SMITH and W. D. PORTER, JJ. Affirmed.

Exceptions to auditor's report.

MORRISON, P. J., filed the following opinion:

This case exhibits a remarkable state of affairs. William R. Reed died in June, 1872, and on June 21, 1872, letters of administration were granted and issued to C. C. Melvin, of Brad-

ford, Pennsylvania. The wife of Reed had died some time in the previous year and he left to survive him no widow, but several children, all of whom at that time were under age. At the time of his death, Reed was in possession of a farm, as a renter, and he had several cows, team of horses, young stock, hogs and crops of oats, potatoes and corn growing upon the farm. Upon the farm there were about twenty cows, the milk from which was delivered to a cheese factory near at hand, and Reed was entitled to one half the proceeds of the milk, crops, hogs and young stock raised upon the farm.

We find from the evidence returned by the auditor that the administrator took possession of the farm, employed help and claims to have paid out considerable money to such help during the summer of 1872, and yet the administrator does not charge himself with a single dollar received from the decedent's interest in the milk, crops and young stock, nor does the auditor charge him with anything for these items.

On July 11, 1872, an inventory and appraisement was filed in the register's office amounting to $1,025.30. This inventory, etc., contains none of the items above referred to. The administrator filed no account till October 6, 1890, about eighteen years after his appointment, and this account was filed in obedience to a citation. He charged himself with $914.14 and explains the discrepancy between this amount and the inventory and appraisement as follows: "The widow of said decedent having taken of the articles inventoried to the accountant, property to the appraised value of $182.25 and there being realized from the sale of the residue $912.14."

In this connection we find as a fact from the undisputed evidence returned by the auditor, that the decedent left no widow and we also find, as a fact, that the sum of $182.25 of the inventoried property was not legally set apart to the family of the decedent and therefore the accountant should be surcharged with that amount.

On January 5, 1891, the children of the decedent by their counsel filed twenty-three exceptions to the administrator's account and in March, 1891, George J. Wolf, Esq., was appointed auditor to pass upon these exceptions and restate the account. The account as filed by the administrator showed a balance due the estate of $86.27.

After brooding over this matter for nearly six years the auditor filed his report on July 19, 1897, with a restatement of the account.

His conclusion is that the administrator owed the estate $170.05. This report is a curiosity. It contains nearly a hundred closely written pages of legal cap. Among other things, the learned auditor furnishes a tedious argument to the effect that the administrator ought not then to be expected to make very full and satisfactory explanation in regard to the assets which came into his hands because of the length of time which elapsed between June, 1872, and October, 1890. The learned auditor seems to think that the children and heirs of Reed are to blame for not compelling the administrator to file an account when the matters of the estate were fresh in the recollection of all of them. We cannot agree with this doctrine. It was the duty of the administrator to file an account promptly and not having done so, it was peculiarly his duty to keep accurate accounts and vouchers and be able to file an account at any time. The very lengthy and tedious history of the doings of this administrator, furnished by the auditor, convicts him of gross negligence. Among other things, he claimed and the auditor allowed him $91.00 credits for eight different items paid to laborers upon the farm, employed by the administrator during the summer of 1872, and yet the auditor declines to charge the accountant with a single dollar of the proceeds of the farm. The learned auditor attempts to justify this on the ground that the family of the decedent used up the crops and the proceeds of the milk and other things coming from the farm. We doubt this but in the face of the findings of the learned auditor, and somewhat conflicting evidence, we do not feel at liberty to charge such items to the accountant. But we cannot consent to allow the credits for labor on the farm after the death of Reed. When the administrator took upon himself the burden of running the farm and engaged laborers thereon, he took the risk of making it pay, and now when he declines to admit that he made a dollar for the estate, out of the farm, we will sustain the exceptions to all of his credits for payment to his laborers. These items amount to $91.00 which will be itemized in our statement surcharging the administrator.

We are of the opinion that the accountant is guilty of such negligence, that he is not entitled to any compensation and he must be charged with interest on such sum as the evidence shows he ought to have accounted for, and paid over more than twenty years ago.

The accountant sets up as an excuse for his delay that a couple of suits were brought against the estate in 1872. The record shows that one of these suits was discontinued in 1873 and the other one is pending yet, and the plaintiff in it has been dead nearly twenty years. If the administrator had been diligent, this case could easily have been ended in not to exceed three years. A large number of exceptions were filed to the auditor's report and these have been argued and are now before us for decision. One of the exceptions is that the auditor erred in not charging the accountant $63.87 paid him August 15, 1872, by William R. Reed estate. The evidence of this is in accountant's own handwriting in his memorandum book which was put in evidence before the auditor and is returned with his report as a substitute for vouchers for a number of payments entered therein by the accountant. The entry referred to says the accountant received it. It is not contained in the inventory nor is it charged in the account filed by the administrator nor by the auditor. We will surcharge the administrator with this sum.

Another exception is that the auditor erred in not charging the account with $75.00 received September 2, 1872, from W. Bearer. This item stands on precisely the same footing as the $63.87, and we see no reason why it should not be charged to the accountant.

Another exception under the same is that the auditor erred in not charging the accountant with $8.50 received at the same time from W. Zeiliff. This stands upon the same ground and it ought to be charged to the accountant.

It is probably impossible at this late date to do exact justice in this case. But we have read over carefully the mass of writing returned by the auditor and we cannot let the account stand as he leaves it.

We think substantial justice will be done by charging the accountant as follows :

1872.

| | | |
|---|---:|---:|
| To balance found in his hands by auditor, . . . . . . $ | 170 | 05 |
| Aug. 15. To cash from estate of Wm. R. Reed, | 63 | 87 |
| Aug. 15. To cash David Cowan, farm labor, surcharge, . . . . . | 2 | 00 |
| Aug. 15. To cash Jno. Carpenter, farm labor, surcharge, . . . . . | 10 | 00 |
| Aug. 15. To cash Sidney Seward, farm labor, surcharge, . . . . | 2 | 00 |
| Aug. 15. To cash G. W. Raub, farm labor, surcharge, . . . . . | 6 | 00 |
| Aug. 15. To cash D. Cowan, farm labor, surcharge, . . . . . | 1 | 00 |
| Aug. 15. To cash Sidney Seward, farm labor, surcharge, . . . . . | 20 | 00 |
| Aug. 15. To cash D. Cowan, farm labor, surcharge, . . . . . | 40 | 00 |
| Aug. 15. To cash G. W. Raub, farm labor, surcharge, . . . . . . | 10 | 00 |
| Sept. 3. To W. Bearce, not charged by auditor, | 75 | 00 |
| To cash W. Zeiliff, not charged by auditor, . . . . . | 8 | 50 |
| Property claimed turned over to widow, surcharge, . . . . . . . . | 182 | 25 |
| Administrator's commission, . . . . | 45 | 60 |
| $ | 636 | 27 |
| Add twenty-three years' interest, . . . | 877 | 91 |
| Amount due the estate April 8, 1901, . | $1,514 | 18 |

We have allowed the accountant about five years without charging him interest, and in that time he could easily have settled the estate and closed up the lawsuit referred to.

*Error assigned* was decree sustaining exceptions to auditor's report.

*S. T. McCormick*, with him *George A. Berry* and *Robert L. Edgett*, for appellant.

*G. B. Mayo*, with him *E. R. Mayo*, for appellees.

OPINION BY BEAVER, J., May 4, 1903:

This is an approach to the end of litigation which, for reasons not apparent, has dragged its slow length along for nearly thirteen years. About the same length of time passed between the granting of letters of administration and the filing of the account of the administrator. It is surely time that an end was made of it.

It is probable that, by an application of technical rules, the appeal might be quashed but we think it better, all things considered, to dispose of the case upon its merits, inasmuch as sufficient of the evidence is published to give us a clear understanding of the case and its consideration inclines us to sustain the findings of fact of the court below. We are of the opinion that the evidence sustains all of the findings which result in the balance found by the court against the appellant of $636.27.

Inasmuch, however, as the account of the administrator has been nearly thirteen years in reaching final adjudication, we do not think it equitable to charge him interest during that period of litigation for which he does not seem to have been responsible. Allowing him five years in which to make the settlement, as was done by the court below, and charging him interest from that time until his account was filed, namely, from June 21, 1877—being five years after the date of the issuing of the letters of administration—until October 6, 1890, when his account was filed, he would be chargeable with $507.43 of interest which, added to the balance found to be due, would make $1,143.70, instead of $1,514.18, as found by the court below. It is so ordered and, as thus modified, the decree of the court below is affirmed and the record remitted to the orphans' court of McKean county to have distribution made accordingly; costs of this appeal to be paid by the appellant.